No. 13924

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

DAVID B. CRAWFORD and
JOHN ISAACSON,

                Plaintiffs and Appellants,

-vs-

PHILIP E. ROY,

                Defendant and Respondent.

---

Appeal from:  District Court of the Ninth Judicial District,
              Honorable R. D. McPhillips, Judge presiding.

Counsel of Record:

    For Appellants:

        Dola N. Wilson argued, Great Falls, Montana

    For Respondent:

        Philip E. Roy argued, Browning, Montana

---

                    Submitted:  January 27, 1978

                    Decided:  APR 12 1978

Filed:  APR 12 1978

_Thomas J. Kearney_
                           Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiffs appeal from an order of the Glacier County District Court dismissing their complaint without prejudice against defendant on an action in debt.

Defendant Roy is an attorney in Browning, Montana, which is located within the exterior boundaries of the Blackfeet Indian Reservation. Roy is an enrolled member of the Blackfeet Indian Tribe. Plaintiffs Crawford and Isaacson are investigators who had offices in Great Falls at the time this action commenced. They performed investigations and legal research for Roy, which involved work both on and off the Blackfeet reservation. Their work involved another Montana Indian tribe, the Belknap, and Federal Court cases involving both Indian and non-Indian parties in this state.

The parties negotiated an initial agreement for services in a series of meetings which took place in Roy's law office and in Great Falls, The investigators reported to Roy in Browning. Prior to the contract in dispute here, Roy had given the investigators a note for $18,000.00 in payment for their services. The investigators surrendered this note to Roy at the time the contract in dispute was signed.

The parties signed the contract in Roy's law office in Browning on December 26, 1975. It provided in relevant part that Roy owed the investigators $24,000.00; that he was paying them $10,800.00; that the $18,000.00 note was returned to him by the investigators; and that Roy would pay the balance due of $13,200.00 in installments sent to the investigators at a post office box in Great Falls.

The investigators filed an action in District Court on November 16, 1976, to collect the debt of $13,200.00 plus interest and costs. Roy moved to dismiss the complaint on December 9, 1976, on the grounds that the state District Court lacked jurisdiction

-2-

over the subject matter. The contention was that only the Black-feet Tribe had jurisdiction. The court received affidavits and documentary evidence and on June 17, 1977 entered its findings and conclusions and dismissed the complaint.

In concluding that Williams v. Lee, (1959), 358 U.S. 217, 79 S.Ct. 269, 3 L ed 2d 251, precluded the District Court from asserting jurisdiction, the District Court made the following findings: That the parties entered into and signed the agreement in Roy's law offices on the reservation; that some of the services to be performed were on the reservation and others off the reserva-tion; that Roy was to make payment to the plaintiffs' assignee through the United States mail and delivery was completed upon posting within the reservation; and that no testimony was introduced to vary the terms of the written agreement.

It is agreed that the federal government did not expressly grant jurisdiction to the state, nor has the state expressly assumed jurisdiction over the subject matter under federal law. Even so, this does not preclude state jurisdiction. The United States Supreme Court stated in Williams v. Lee, supra:

> " * * * Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them. * * * " 3 L ed 2d at 254.

This Court, quoting from Organized Village of Kake v. Egan, (1960), 369 U.S. 60, 82 S.Ct. 562, 7 L ed 2d 573, stated in Iron Bear v. Dist. Court, (1973), 162 Mont. 335, 344, 512 P.2d 1292:

> " * * * 'even on reservations state laws may be applied unless such application would inter-fere with reservation self-government or would impair a right granted or reserved by federal law.' * * *"

Absent federal law, this state has asserted jurisdiction over a transaction involving an Indian party when that transaction in-volved significant contacts with the state outside reservation

boundaries. When the transaction in dispute, or any part of it, has occurred outside the reservation but within the geographic boundaries of the state, this Court in several cases has held an Indian party has voluntarily subjected himself to state jurisdiction over that transaction. Little Horn State Bank v. Stops, (1976), ____ Mont. ____, 555 P.2d 211, 33 St.Rep. 959, cert.den. ____ U.S. ____, 97 S.Ct. 1171, 51 L ed 2d 580 (where Indian parties had obtained a loan from non-Indians off the reservation); State ex rel. Old Elk v. District Court, (1976), ____ Mont. ____, 552 P.2d 1394, 33 St.Rep. 637 (where the reservation Indian was a suspect in an off-reservation shooting); and Bad Horse v. Bad Horse, (1974), 163 Mont. 445, 517 P.2d 893, cert.den. 419 U.S. 847, 95 S.Ct. 83, 42 L ed 2d 76 (where the Indian couple had been married off the reservation). See also United States ex rel. Cobell v. Cobell, (9th Cir. 1974), 503 F.2d 790, where the Federal District Court for Montana upheld continuing state jurisdiction over a child custody conflict when the Indian couple had obtained a divorce in State District Court; and Mescalero Apache Tribe v. Jones, (1973), 411 U.S. 145, 93 S.Ct. 1267, 36 L ed 2d 114, where the Indian-operated ski area located off the reservation was held subject to state income tax.

Here, we have a situation where two non-Indians outside reservation boundaries were hired by Roy to perform services both on and off the reservation; negotiations leading up to the contract were made through phone calls and correspondence outside the reservation; and payment on the contract was to be made to a post office box outside the reservation. These activities are sufficient to give a state court jurisdiction and cannot be held to infringe on the rights of the reservation Indians to make their own laws and to be ruled by their own laws. The reservation provides no sanctuary to Roy in this situation.

We note also that Roy employed these people to aid him in

his law practice. To maintain his law practice, Roy not only had to be initially licensed by the State of Montana and be qualified by the State of Montana, but he also must pay his annual license fee to the State. (Section 93-2010 and 93-2012, R.C.M. 1947). Moreover, as an attorney, Roy is subject to the rules of this Court under Art. VII, Section 2, 1972 Montana Constitutution. Roy was not acting as an individual at the time, but was acting in his capacity as an attorney. He employed these people to work on legal matters off the reservation as well as on the reservation.

It is clear, therefore, that one licensed to practice law in this state cannot make a contract as an attorney to be performed both on and off the reservation and then use his status as an Indian to defeat state jurisdiction when he is sued on the contract involved. It is equally clear that there were sufficient contacts in this case to allow state jurisdiction even if Roy had not made the contracts in his capacity as a lawyer. The hiring of the investigators, the negotiations on the contract and payment for services all occurred off the reservation. It is immaterial that the actual signing of the contract occurred on the reservation in Roy's law office.

Accordingly, we hold that Roy's status as an attorney licensed by this state and the nature of the transaction involved, are both reasons to allow proceedings in State District Court rather than on the Indian reservation.

The order of the District Court is reversed, and the case remanded for further proceedings.

_____
Justice

We Concur:

_____
Chief Justice

_____
Justices

-5-