R. C. HEDREEN COMPANY, a Washington corporation, Plaintiff,

v.

CROW TRIBAL HOUSING AUTHORITY, Defendant.

No. CV–80–136–BLG.

United States District Court,
D. Montana,
Billings Division.

May 28, 1981.

---

Stephen M. Rummage, Rex M. Walker, Davis, Wright, Todd, Rises & Jones, Seattle, Wash., and Gary B. Chumrau, Garlington, Lohn & Robinson, Missoula, Mont., for plaintiff.

Urban Bear Don't Walk, Billings, Mont., David K. Schoyer, Denver, Colo., for defendant.

## MEMORANDUM OPINION

BATTIN, Chief Judge.

### I. NATURE OF THE CASE

This is an action to recover money allegedly due the plaintiff for construction of housing on the Crow Indian Reservation, and for damages allegedly arising from wrongful non-payment of those amounts. It is before the Court on a motion to dismiss.

### II. FACTUAL BACKGROUND

The Crow Tribal Housing Authority was established in 1963 pursuant to an ordinance of the Crow Tribe. The ordinance was enacted in accordance with guidelines established by the Department of Housing and Urban Development (HUD) so as to qualify for HUD assistance in building housing for Indians living on the Crow Indian Reservation.

On September 29, 1976, after competitive bidding, the Housing Authority entered into a construction contract with G. R. Associates.[1] The contract provided for the construction of single family homes and a community building. The project was sponsored and financed by HUD under the Mutual Help Homeownership Opportunity Program. Under the terms of the program, HUD provided the financing for the projects by delivering funds to the Housing Authority, and the Authority would, in turn, make payments to the contractor as per the construction contracts.

Link & Associates was the architect on the project. It was responsible for supervising the daily progress of the construction. On or about November 9, 1979, Link

---

1. G. R. Construction, a Montana-based business, was the apparent low bidder on the projects. A problem arose as to G. R. Construction's bonding capability, however, and in order to obtain the contract, G. R. Construction formed a joint venture with R. C. Hedreen Co., a Washington corporation, the venture operating under the name of G. R. Associates.

certified that the project was completed and that the final payments on the contracts were due and owing. HUD has paid the Housing Authority the amounts to be paid the contractor, but no payment has been made to the contractor.

G. R. Construction assigned all of its rights under the contracts to R. C. Hedreen on August 5, 1980. R. C. Hedreen then brought this action to collect amounts allegedly due on the contracts and to recover interest expense incurred in borrowing funds to finance projects subsequent to the one at issue here. According to the plaintiff, these loans were necessary to replace moneys which would have been available had the defendant made timely payment. Jurisdiction is assertedly grounded on diversity of citizenship, 28 U.S.C. § 1332.

The defendant Housing Authority prosecutes this motion to dismiss on several bases:

(1) This Court lacks jurisdiction—

    (a) Plaintiff has failed to comply with the requirements of Federal Rule of Civil Procedure 8(a).

    (b) The Housing Authority is a public body created by the Crow Tribe and as such is not a citizen for diversity purposes.

    (c) The Housing Authority's consent to "sue and be sued" is not an effective waiver of sovereign immunity and in any event is limited to suits in Tribal court.

    (d) G. R. Construction's assignment of its rights under the contracts at issue is a collusive assignment for the purpose of establishing federal jurisdiction.

(2) The construction projects at issue were never completed, therefore the plaintiff is not entitled to recover.

(3) The plaintiff has failed to join an indispensible party (HUD, Link & Associates and/or G. R. Construction).

## IV.  DISCUSSION

### 1.  LACK OF JURISDICTION

(A) Requirements of Fed.R.Civ.P. 8(a).

■ Defendant first contends that this Court lacks jurisdiction based on diversity of citizenship (28 U.S.C. § 1332) since the complaint fails to contain "a short and plain statement of the ground upon which the Court's jurisdiction depends." Fed.R.Civ.P. 8(a). Defendant insists that plaintiff's assertion that the Housing Authority is an "entity" does not adequately state what kind of citizen the Authority is for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

28 U.S.C. § 1332(a) states:

> The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interests and costs, and is between (1) citizens of different states; . . . .

The plaintiff alleges in Paragraph 3 of its complaint that it is a citizen of the State of Washington, with its principal place of business in Washington, that more than $10,000 is in controversy, and that "the Crow Tribal Housing Authority is an entity having citizenship in the State of Montana." Rule 8(a) requires nothing more than this: such allegations constitute "a short and plain statement of the ground upon which the court's jurisdiction depends." Fed.R.Civ. Pro. 8(a).

(B) The Housing Authority as a Citizen.

■ Defendant next contends that the Housing Authority is not a citizen of the state of Montana, but, rather, a public body created by the Crow Tribe, a sovereign nation. It cites substantial authority for the uncontested principle that the *Crow Tribe* is not a citizen of Montana or a foreign state for diversity purposes. The question is posited, "If the Crow Tribe is not a citizen for diversity purposes, how can a public body created pursuant to a tribal ordinance be a citizen of Montana?"

No theoretical problem is presented. The *tribe* is immune from suit as a result of its sovereign status, thus the *tribe* as an entity is not a citizen for diversity purposes. The Housing Authority was established as a corporate entity pursuant to Tribal Ordinance

64–17 so that the tribe could deal effectively as a business entity in the commercial community. That it has done; it hardly lies in its mouth to deny its existence as a commercial corporation with its principal place of business within the state of Montana.

Plaintiff cites several cases for the proposition that an Indian corporation is a citizen for purposes of diversity jurisdiction. *See Parker Drilling Co. v. Metlakatala Indian Community*, 451 F.Supp. 1127 (D.Alaska 1978); *Namekagon Development Co., Inc. v. Bois Forte Reservation Housing Authority*, 395 F.Supp. 23 (D.Minn.1974); *Enterprise Electric Co. v. Blackfeet Tribe of Indians*, 353 F.Supp. 991 (D.Mont.1973); *R. C. Hedreen Co. v. Blackfeet Indian Reservation and the Blackfeet Housing Authority*, CV–80–37–GF (Sept. 30, 1980). Only the *Namekagon* and *R. C. Hedreen* cases involved suits against corporations chartered pursuant to tribal ordinance; in the other cases, the only corporations involved were tribal entities chartered pursuant to the Indian Reorganization Act, 25 U.S.C. § 477. These two cases provide little guidance to the Court on this issue: In *Namekagon* the court did not address the issue of diversity of citizenship, apparently assuming the Housing Authority was a citizen for purposes of diversity; in *R. C. Hedreen* the court summarily concluded that diversity was present since it was alleged that the Housing Authority "is an entity with its citizenship and principal place of business in Montana."

The reason prior court decisions have not expressly addressed the question of whether a corporation chartered by the tribe is a citizen for diversity purposes is that the issue is almost inseparable from the issue of sovereign immunity. To illustrate, under the defendant's analysis it would be possible to conclude that the Housing Authority and/or even the Crow Tribe has completely waived its sovereign immunity, yet nonetheless cannot be sued in federal court since they are not "citizens" for purposes of diversity jurisdiction. Both common sense and the legal practicalities of the commercial world dictate a contrary result. Re-

gardless of the sovereign source from which a corporate entity derives its charter, when it is constituted with all of the required formalities it comes into existence as a legal entity. As a legal entity, it is susceptible to suit on its contracts in any court of competent jurisdiction unless it enjoys some legal excuse, *e. g.*, sovereign immunity. While the court recognizes that an Indian tribe is not a citizen of the state of Montana, it is not a tribe that is being sued. Rather, it is a business entity created to do that which the tribe could not do without waiving its immunity to suit, i. e., "enter into agreements, contracts and understandings with . . . any person, partnership, corporation . . . ." Tribal Ordinance 64–17 at 5. The Housing Authority has its principal and only place of business in the state of Montana. Accordingly, it is a citizen of the state for purposes of diversity jurisdiction and is susceptible to suit in federal court if it has waived its immunity to suit in those courts.

(C) Sovereign Immunity.

The defendant next contends that any waiver of sovereign immunity is limited to suits in tribal court. There is at least one court that has apparently reached precisely this result. In *Hickey v. Crow Creek Housing Authority*, 379 F.Supp. 1002 (D.S.D. 1974), the court was faced with a situation highly analogous to that presented here: The tribe had passed an ordinance authorizing the Housing Authority to agree by contract to waive any immunity from suit it might otherwise have, and the plaintiff subsequently entered a contract with the Authority. Though diversity of citizenship was not urged as a basis of jurisdiction, the court, in passing on the other asserted bases of jurisdiction, concluded that:

> By granting its consent to sue and be sued, the Tribal Council would only have power to establish tribal, not federal, jurisdiction in actions concerning the Housing Authority.

*Id.* at 1003.

Though the *Hickey* court doesn't elaborate upon or cite any authority in support

of its statement, the court's conclusion appears to be a logical extension of the explicit dicta in several cases that a tribe cannot consent to a waiver of immunity without a specific act of Congress. *See United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 512–13, 60 S.Ct. 653, 656–657, 84 L.Ed. 894 (1940); *Cherokee Nation v. State of Oklahoma,* 461 F.2d 674, 680–81 (10th Cir.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 489 (1972); *Maryland Casualty Co. v. Citizens National Bank of West Hollywood,* 361 F.2d 517 (5th Cir. 1966), *cert. denied,* 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 143 (1966); *Thebo v. Choctaw Tribe of Indians,* 66 F. 372 (8th Cir. 1895).

The *Hickey* case has been disapproved of in another district court case, *Namekagon Development Company, Inc. v. Bois Forte Reservation Housing Authority,* 395 F.Supp. 23 (D.Minn.1974), *aff.* 517 F.2d 508 (8th Cir. 1975), however. That case was also highly analogous to the present case. In reference to the *Hickey* court's conclusion that a "sue and be sued" clause in a tribal ordinance can operate only as a consent to suit in tribal court, the court in *Namekagon concluded :*

> This Court cannot agree, for there is little logic to that proposition and there is no language in the Ordinance limiting the consent to suits in tribal court. It is important to the development of the Indian tribes that they be given a greater control over their own destinies. If they are to be permitted to form corporations to conduct semi-governmental activities, they must of necessity be permitted to

waive immunity from suit with respect to those activities. If a tribe can unilaterally consent to suit in a tribal court, there is no reason why it should be incapable of consent to suit in federal court. The Court, therefore, concludes that Congress did not need to join in the waiver of the immunity of this one corporation.

*Namekagon, supra,* 395 F.Supp. at 28–29. The court's logic is persuasive.

Although a tribe, as a municipality, is not subject to suit without its consent, it may be argued that a tribe has legal capacity to consent to such a suit. The power to consent to such suit must be regarded as cognate with the power to bring suit. Federal Indian Law, 494 (1958).[2]

The dictum indicating the consent of the United States is required for a tribe to waive its immunity is strong. Still, even if we assume that the consent of the United States is required for the tribe to be sued, the Court concludes the federal government has consented to that waiver for the purposes of implementing the home development projects here at issue. Judge Heaney addresses this argument in his opinion in *Namekagon, supra* at 29.

> Even if it be held that Congress must consent to a waiver of immunity, consent to the limited waiver involved here may be implied from the actions of Congress in establishing a sweeping program to provide low-income housing to needy families, including Indian families. *Cf., Edelman v. Jordan,* 415 U.S. 651, [693–696], 94 S.Ct. 1347, [1370–1372], 39 L.Ed.2d 662, 690–92 (1974) (Marshall, J., concurring) (suggesting a waiver of sov-

---

**2.** Justice Brandeis' language in *Turner v. United States,* 248 U.S. 354, 39 S.Ct. 109, 63 L.Ed. 291 (1919), supports, at least by implication, the conclusion that specific Congressional consent is not necessary for a tribe to waive its immunity. He writes "[w]ithout authorization from Congress, the [Indian] Nation could not then have been sued in any court; *at least, without its consent." Id.* at 358, 39 S.Ct. at 110; quoted in *Namekagon, supra* at 28 (emphasis added). To the same effect is language from *Puyallup Tribe v. Washington Game Department,* 433 U.S. 165, 170–73, 97 S.Ct. 2616, 2619–2622, 53 L.Ed.2d 667 (1977), where the court's language implies that a tribe is free to

waive its immunity. The Courts in *Lomayaktewa v. Hathaway,* 520 F.2d 1324, 1326 (9th Cir. 1975), *cert. denied,* 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976), and *R. C. Hedreen Co. v. Blackfeet Tribe of the Blackfeet Indian Reservation and the Blackfeet Housing Authority,* CV–80–37–GF (Sept. 30, 1980), at 3, have apparently taken the implication from the Supreme Court cases to heart, concluding that the tribe involved in each case, "as a dependent, political quasi-sovereign nation ... enjoys sovereign immunity and cannot be sued without its consent *or* the consent of the Congress." (Citations omitted, emphasis added.)

ereign immunity by a state by participating in a federally-funded welfare program). Consent to limited suit against a reservation-created housing authority may be inherent in that federal program, in light of the fact that developers and lenders will be reluctant to deal with a corporation which is legally irresponsible and cannot be made to answer for its debts. Counsel for the Housing Authority has pointed to cumbersome alternative procedures for securing financing and development, including a corporation formed by private Indian individuals or escrow accounts.

The Court is unable to perceive any significant practical difference between the means employed here and the suggested alternatives. In effect, an escrow account has been established here, with the funds on deposit at the Farmers and Merchants Bank at Cook, Minnesota. The Tribe is exposed to no liability and only the assets for the housing project are vulnerable to suit.

This Court agrees with the conclusions reached in *Namekagon*. Congress has expressly authorized HUD to undertake, in cooperation with the tribes, housing projects on the reservations. Under the United States Housing Act of 1937 the United States implemented a policy of providing assistance to *states* to remedy unsafe and unsanitary housing conditions, and of vesting local housing authorities with the maximum amount of responsibility in administering their housing authorities. 42 U.S.C. § 1437. The term "state" is defined, as of Public Law 93–383, 88 Stat. 655 § 3(7), August 22, 1974, to include "Indian tribes." (As originally enacted, Indian tribes were included in the Act under the term "dependencies," Public Law 412, ch. 896 § 2(12), 50 Stat. 888, 889, Sept. 1, 1937.) Also, express statutory provision is made for allocating funds to the tribes. 42 U.S.C. § 1437c(c). HUD was acting pursuant to declared congressional policy in promulgating the provisions allowing the tribes to enter the commercial marketplace as responsible business entities.

The current HUD regulations with respect to Indian Housing are found at 24 C.F.R., part 805. They not only require that a Housing Authority be established for the tribe to take advantage of the housing program, but prescribe the specific methods by which an Indian Housing Authority (IHA) may be established. 24 C.F.R. § 805.-108 provides that:

An IHA may be established . . .

(a) by a tribal ordinance enacted by exercise of a tribe's powers of self-government independent of state law, creating an IHA *with all necessary legal powers to carry out low income housing projects for Indians*, which IHA shall be established in accordance with § 805.109 . . . (emphasis added).

§ 805.109 provides in relevant part:

(b) *Legal Capacity of Tribe to Establish IHA.* Where an Indian tribe has governmental police power to promote the general welfare, including the power to create a housing authority, an IHA may be established by tribal ordinance enacted by the governing body of the tribe.

(c) *Approval or Review of Ordinance by the Department of the Interior.* HUD shall not enter into an undertaking for assistance to an IHA formed by tribal ordinance unless such ordinance has been submitted to HUD, accompanied by evidence that the tribe's enactment of the ordinance either has been approved by the Department of Interior or has been reviewed and not objected to by that Department.

The format and provisions of the tribal ordinance which operates as the charter of the corporation are also dictated by the Indian Housing regulations. *See* 24 C.F.R. § 805.109(d), (e); *see also* Appendix I thereto which sets out the specific provisions. Article V, ¶ 2 of that Appendix, which is also Article V, ¶ 2 of Crow Tribal Ordinance 64–17 at issue here, recites:

The Council hereby gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract, claim or obligation arising out of its activities under this

ordinance and *hereby authorizes the Authority to agree by contract to waive any immunity from suit which it might otherwise have*; but the Tribe shall not be liable for the debts or obligations of the Authority [except in-so-far as expressly authorized by this ordinance.] (That portion of the proceeding provision in brackets is found only in Crow Tribal Ordinance 64–17.) (Emphasis added.)

■ This ordinance, like all ordinances creating corporate Housing Authorities, required the approval of the Bureau of Indian Affairs. As these provisions demonstrate, this is not a situation where the tribe has unilaterally waived its sovereign immunity without the supervision of the United States government. To the contrary, the government, in order to allow Indian tribes to take advantage of housing moneys available through HUD, has specifically authorized the waiver and directed the form which a tribal entity must take so as to waive its immunity and effectively enter the commercial market to take advantage of these programs.[3] It has also divorced the corporate entity from the tribe for purposes of liability, thereby strictly limiting the waiver. Those contracting with the Authority have no recourse against the tribe. *See R. C. Hedreen Co. v. Blackfeet Tribe of Indians and Blackfeet Housing Authority,* CV–80–37–GF at 1–4.

One final argument supports finding a waiver of sovereign immunity in this case:

> To dismiss this suit against the local Housing Authority on grounds of sovereign immunity would be grossly unfair. The Reservation Business Committee purported to create an independent corporation which would be legally responsible for its promises. It invited outsiders to do business with it on a contractual basis, and the corporation promised the plaintiff over one million dollars in compensation. As was said by another Court in a related context:

> > * * * [I]t is repugnant to the American theory of sovereignty that an instrumentality of the sovereign shall have all the rights and advantages of a trading corporation, and the ability to sue, and yet be itself immune from suit, and able to contract with others, or to injure others, confident that no redress may be had against it as a matter of right * * *.

> *Federal Sugar Refining Co. v. United States Sugar Equalization Board,* 268 F. 575, 587 (S.D.N.Y.1920).

*Namekagon, supra* at 29.

The *Namekagon* court's analysis is totally applicable in this case. The tribal council passed an Ordinance (approved by the BIA) which purported to create an independent corporate entity for the purpose of contracting with other business entities to construct housing developments. So as to allay any questions as to the Authority's legal responsibility, the Ordinance expressly provides the consent of the Authority to sue and be sued and to waive "any immunity to suit which it might otherwise have . . . ." It would indeed be "grossly unfair" to allow the Authority to retreat behind a veil of sovereign immunity.

■ The Authority argues in support of its position that any waiver of immunity is limited to suits in tribal courts the tribal jurisdictional statutes which provide in sum that the tribe has jurisdiction of all persons transacting business and all civil actions arising on the reservations. While the tribal jurisdictional statutes do assert the jurisdiction of the tribe over these claims, they do not purport to establish the exclusive jurisdiction of the tribal court. Accordingly, the suit may be brought in any court of competent jurisdiction.[4] Second, the con-

---

3. Under the provisions of 42 U.S.C. § 1401, et seq., only a local housing authority is eligible to receive and administer funds available from the federal government for the construction of low income housing. *See Namekagon Development Co. v. Bois Forte Reservation Housing Authority,* 517 F.2d 508 (8th Cir. 1975).

4. Since the Authority has voluntarily gone beyond reservation boundaries to transact the business and negotiate the contracts at issue here, suit could also have properly been brought in state court. *See Crawford v. Roy,* 176 Mont. 227, 230–31, 577 P.2d 392, 393–94 (1978); *see also* the relevant discussion in *Mes-*

sent to "sue and be sued" is not limited to any court, and there is no reason for the court to imply any limitation.[5] The Authority is amenable to suit in federal court.

### (D) Collusive Assignment of Rights.

█ R. C. Hedreen Co. (plaintiff), a Washington corporation has been assigned all of G. R. Construction's (a Montana corporation) rights under the construction contracts at issue here. As a result, complete diversity has been established. Defendant attacks this assignment as a collusive transaction carried out for the singular purpose of vesting this Court with jurisdiction.

28 U.S.C. § 1359 provides:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

When the issue of a collusive assignment is raised, the party asserting diversity has the burden of showing the non-collusive nature of the assignment. *Bradbury v. Dennis*, 310 F.2d 73, 74 (10th Cir. 1962), *cert. denied*, 372 U.S. 928, 83 S.Ct. 874, 9 L.Ed.2d 733 (1963).

The assignment at issue provides:

G. R. Construction Co., a Montana corporation, hereby assigns and sets over to R. C. Hedreen Co. all of the right, title and interest of G. R. Construction Co. in and to the housing contracts entered into with Crow Tribal Housing Authority on Montana Projects 14–7 and 14–8 which were entered into under the name G. R. Associates, a Joint Venture, as contractor.

G. R. Construction Co. acknowledges that R. C. Hedreen Co. is the real party in interest under said contracts, and G. R. Construction Co. hereby acknowledges that R. C. Hedreen Co. has the authority to prosecute and/or settle any claims under said contracts with the Crow Tribal Housing Authority.

█ The assignor in this case has relinquished all of its interest in the contracts at issue by virtue of its assignment. That assignment is valid on its face. It has stated the business purposes for the assignment, and this Court has no basis to doubt the legitimacy of those purposes. In any event, the purpose of the assignment need not be explored: ". . . where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' *regardless of the transferor's motive.*" *Kramer v. Caribbean Mills*, 394 U.S. 823, 828 n.9, 89 S.Ct. 1487, 1490 n.9, 23 L.Ed.2d 9 (1969) (emphasis added); citing *Cross v. Allen*, 141 U.S. 528, 12 S.Ct. 67, 35 L.Ed. 843 (1891); *South Dakota v. North Carolina*, 192 U.S. 286, 24 S.Ct. 269, 48 L.Ed. 448 (1904); *Black & White Taxicab Co. v. Brown & Yellow Taxicab Co.*, 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928); cf. *Williamson v. Osenton*, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914). The assignment is not violative of 28 U.S.C. § 1359.

*calero Apache Tribe v. Jones*, 411 U.S. 145, 152–58, 93 S.Ct. 1267, 1272–76, 36 L.Ed.2d. 114 (1973). Adequate substantial contacts with the state are manifest: (1) the contracts were made with non-Indian entities residing off the reservation, (2) they contemplated the procurement of supplies and labor off the reservation, (3) bids for the work were solicited off the reservation, (4) the plaintiff executed the contracts off the reservation, and (5) the bond essential to the contracts was procured and signed off the reservation. In any event, this conclusion does not "infringe on the rights of Indians to make their own laws and to be ruled by their own laws," *Crawford, supra*, 176 Mont. at 230; 577 P.2d at 394; *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 270, 3 L.Ed.2d 251 (1959); *see also Duluth Lumber & Plywood v. Delta Development, Inc.*, Minn., 281 N.W.2d 377, 382–83 (1979), particularly since we are dealing with a commercial transaction not confined to the reservation, where the applicable tribal ordinance (authorized by the federal government) contains an unqualified "sue and be sued" clause.

5. It should be noted that to find no waiver in this case or a waiver limited to suits in tribal court might well not serve the long-term interests of the tribe. There are few businesses that would contract with any business arm of the tribe (particularly when that body is operating under the auspices of a federal housing program), if it suspected that it had no legal recourse against that body, or was limited to a suit in tribal court. Such a holding would cripple a tribe's own ability to take advantage of federal projects established for their benefit, or to contract commercially with any business for any purpose.

### 2. FAILURE TO STATE A CLAIM— Fed.R.Civ.P. 12(b)(6)

The defendant makes two arguments here. First, it is argued that the plaintiff has failed to allege with the required specificity the necessary jurisdictional facts. This contention has been addressed above. Second, the defendant denies plaintiff's allegation that the construction project has been completed. This denial is supported by letters discussing incomplete and/or unsatisfactory work carried out by the plaintiff.

Rule 12(b)(6) is not designed to test the merits of a case, but the legal sufficiency of a claim. The complaint sufficiently alleges a claim for breach of contract and cannot be dismissed under 12(b)(6).

■ As stated, the defendant has introduced letters in support of its 12(b)(6) argument. Rule 12(b) provides that if matters outside the pleadings are considered by the court the motion shall be treated as one for summary judgment, and disposed of as provided by Rule 56. Plaintiff's counsel correctly points out that "[e]xhibits which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976). No proper foundation has been laid and the Court need not consider the letters.

Even if the Court were to consider the letters, they only controvert the plaintiff's allegations as to whether the work was completed. The plaintiff's position is supported by the architect's certificates of completion, which were attached as Exhibits A and B to plaintiff's original brief. Accordingly, a genuine issue of material fact has been posited which precludes the entry of summary judgment. Fed.R.Civ.P. 56(c).

### 3. JOINDER—Fed.R.Civ.P. 19

The defendant's final argument is that the plaintiff has failed to join necessary parties (Link & Associates, HUD and/or G. R. Construction). Fed.R.Civ.P. 19(a) requires joinder of a party if that party is necessary to a just adjudication of the controversy, and 19(b) calls for dismissal of an action in certain instances when necessary parties ("persons to be joined if feasible") cannot be joined. A party is "necessary" if:

> (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Fed.R.Civ.P. 19(a).

#### (A) HUD and Link.

■ The defendant fails to elaborate on why either HUD or Link & Associates are indispensable parties, stating only that the parties' inter-relationship demands joinder if complete relief is to be had. The plaintiff has no contract with HUD with respect to this action, and by the terms of the construction contracts plaintiff could look only to the Housing Authority for payment. "Complete relief" can be had between the parties without the joinder of HUD. Fed.R.Civ.P. 19(a)(1). Also, the defendant has not indicated how disposition of the action in HUD's absence would subject anyone to any danger of inconsistent obligations with respect to the action and none are apparent to the Court. HUD is not an indispensable party. Fed.R.Civ.P. 19(a)(2).

The same analysis applies to Link & Associates. Link was never a party to the construction contracts and has no rights thereunder. As the plaintiff points out, while Link & Associates' *"testimony"* will be important to it at trial, complete relief can be had against the Authority without joinder of the architect.

#### (B) G. R. Construction.

As noted above, G. R. Construction assigned all of its rights under the contracts at issue to the plaintiff. The assignment of rights is valid on its face and the defendant has raised no argument disputing its substantive validity. G. R. Construction no

longer has any interest to protect with respect to the contracts.

Obviously, a prerequisite to finding a party is "necessary" is that the absent party have an interest in the controversy. *See State of Washington v. United States*, 87 F.2d 421, 427–28 (9th Cir. 1936); 3A Moore's Federal Practice ¶ 19.07[1], [2].

> An assignor who has assigned all right and interest to another need not be joined in an action involving the property assigned because complete relief can be accorded in his absence and, furthermore, he has no interest to protect. *See generally*, 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1613, at 128–29 (1972) (suggesting that not only is an assignor's presence unnecessary for a just adjudication of a suit brought by the assignee, but that the assignor would not even be a proper party).

*Federal Deposit Ins. Corp. v. Huntington Towers, Ltd.*, 443 F.Supp. 316, 319–20 (E.D. N.Y.1977). There is no apparent "substantial risk" of the defendant incurring double or inconsistent liability with respect to the contracts; accordingly, G. R. Construction is not an indispensible party.

An appropriate order shall issue in accordance with this Memorandum Opinion.