William Ralph ELLIOTT, in his capacity as the Trustee of the Elliott Family Trust, Plaintiff,

v.

CAPITAL INTERNATIONAL BANK & TRUST, LTD., James R. Paisley, Jr., Kiowa Tribe of Oklahoma, a/k/a Kiowa Indian Nation, B.V. Beheermaatschappij, UIS, a/k/a BVB Development Company, Inc., Kiowa Industrial Development Commission, and United Financial Operation, Inc., Defendants.

No. 4:94–CV–93.

United States District Court, E.D. Texas, Sherman Division.

Dec. 14, 1994.

Grady Michael Gruber, Jeffrey Jack Burley, Cowles & Thompson, Dallas, TX, for plaintiff.

William D. Watts, Shelia D. Tims, R. Brown Wallace, Andrews Davis Legg Bixler Milsten & Price, Oklahoma City, OK, for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING KIOWA TRIBE OF OKLAHOMA'S MOTION TO DISMISS

SCHELL, Chief Judge.

Pursuant to the Order of Recusal signed by the Honorable Paul Brown on November 17, 1994, before the undersigned is Defendant Kiowa Tribe of Oklahoma a/k/a Kiowa Indian Nation's Motion to Dismiss under Rules 12(b)(1) and/or 12(b)(6), Fed.R.Civ.P., filed on October 25, 1994. Plaintiff's response was timely filed on November 10, 1994. Upon consideration of the motion, response, and attached memoranda of law, the court is of the opinion that the motion should be GRANTED as further explained herein.

### BACKGROUND

Plaintiff's protest is straightforward, and alleges that he was bilked out of $200,000 (and interest) by Defendant Paisley, who held himself out to be the CEO of Defendant Capital International Bank & Trust, which bank was chartered, governed, and owned by the Kiowa Defendants and reinsured by Defendants BVB and United Financial Operation.[1]

Defendant Kiowa Tribe of Oklahoma ("the Tribe") has filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., as-

---

**1.** Less certain is the extent to which Plaintiff alleges that Defendant Paisley—recently convicted in a U.S. District Court in Pennsylvania for bank fraud—either misled (or, in contrast, was actively conspiring with) the Kiowa Defendants.

serting that the doctrine of Tribal Sovereign Immunity divests this court of jurisdiction.

## RULE 12(b)(1) MOTION

Plaintiff does not argue with the general proposition that, absent express congressional authorization or tribal waiver, Tribal Sovereign Immunity would prevent this action against the Tribe. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58–59, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). However, it is Plaintiff's contention that:

> The main basis for jurisdiction in the present case is the extensive commercial activity engaged in by Defendants off the reservation. While it is true that Indian tribes generally enjoy tribal immunity, numerous courts have held that such immunity does *not* extend to cover commercial activities off the reservation.

Opposition at 3 (emphasis in original). Three cases are cited in support of the above excerpt.

Two of the three cases are readily distinguishable in that they did not involve suits against the tribe itself. *See Dixon v. Picopa Constr. Co.,* 160 Ariz. 251, 772 P.2d 1104 (1989) (construction company incorporated by tribe); *Crawford v. Roy,* 176 Mont. 227, 577 P.2d 392 (1978) (tribal member licensed as attorney by state). Although the third case does nominally support the proposition, a close reading reveals certain limitations. *See Padilla v. Pueblo of Acoma,* 107 N.M. 174, 754 P.2d 845, 850–51 (1988), *cert. denied,* 490 U.S. 1029, 109 S.Ct. 1767, 104 L.Ed.2d 202 (1989) (in light of disfavor of sovereign immunity in New Mexico common law, exercise of jurisdiction over sovereign Indian tribe for off-reservation conduct allowed as "solely a matter of comity").

Moreover, the reasoning of the *Padilla* court has been severely criticized by the Ninth Circuit Court of Appeals:

> If there were error in the *Padilla* court's analysis, it was in failing to recognize that the scope of tribal immunity in the courts of New Mexico was not wholly a question of New Mexico law. As the *Padilla* court itself noted, "[a]bsent federal authorization, tribal immunity is privileged from diminution by the states." Thus, the court should have looked at the scope of tribal immunity under federal law, rather than the extent of comity afforded under state law.

*In re Greene,* 980 F.2d 590, 594–95 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 681, 126 L.Ed.2d 649 (1994) (tribal immunity prevents suit by bankruptcy trustee arising out of off-reservation repossession by tribally-owned furniture business).

The court's research has led it to the conclusion that the *Padilla* approach is generally rejected outside of the courts of that state. *See, e.g., American Indian Agricultural Credit Consortium, Inc. v. Standing Rock Sioux Tribe,* 780 F.2d 1374 (8th Cir.1985) (suit against tribe on promissory note; provision allowing for recovery of attorneys fees and choice of law clause did not constitute waiver of immunity); *Bottomly v. Passamaquoddy Tribe,* 599 F.2d 1061 (1st Cir.1979) (suit against tribe to recover on contingent attorneys' fees contract).

The few Fifth Circuit opinions on this subject are similarly unhelpful to Plaintiff's argument. The most pertinent case, *Maryland Casualty Co. v. Citizens National Bank of West Hollywood,* 361 F.2d 517 (5th Cir.), *cert. denied,* 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 143 (1966), involved an attempt to garnish Seminole funds in order to satisfy a judgment which arose from a performance and payment bond that the Seminole tribe had executed as part of a construction enterprise. *Id.* at 518–19. In refusing to allow the garnishment, the court wrote that:

> The fact that the Seminole Tribe was engaged in an enterprise private or commercial in character, rather than governmental, is not material. It is in such enterprises and transactions that the Indian tribes and the Indians need protection. The history of intercourse between the Indian tribes and Indians with whites demonstrates such need.... To construe the immunity to suit as not applying to suits on liabilities arising out of private transactions would defeat the very purpose of Congress in not relaxing the immunity, namely, the protection of the interests and property of the tribes and the individual Indians.

*Id.* at 521–22. Though such paternalistic justification may seem inappropriate in this

day, this court has discovered no subsequent retreat by the Fifth Circuit regarding the court's conclusion.

This court finally notes that, as *dicta,* Justice Stevens' comments in his individual concurrence in *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), are not binding on the lower courts. *See id.* at 515, 111 S.Ct. at 912 ("I am not sure that the rule of tribal sovereign immunity extends to cases arising from a tribe's conduct of commercial activity outside its own territory ...").

Plaintiff has provided no evidence of an express waiver of sovereign immunity by the Tribe. *Cf. Weeks Construction, Inc. v. Oglala Sioux Housing Authority,* 797 F.2d 668, 671 (8th Cir.1986) ("sue or be sued" clause in tribal ordinance constitutes express waiver) (citing *Maryland Casualty Co., supra*); *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida,* 788 F.Supp. 566 (S.D.Fla.1992) (arbitration clause acts as express waiver). Rather, Plaintiff argues without citation that "Defendants' acts in soliciting business from and contracting with a Texas resident, which contract was to be completed in Texas, acts as an express waiver of any tribal immunity." Opposition at 5.[2]

The court is aware that dismissal of the Tribe may leave Plaintiff—guilty perhaps of nothing more than unfamiliarity with a legal principle of tortured pedigree—with substantially-impaired prospects of recovering the $200,000 at issue. Nevertheless, as stated by the Eighth Circuit:

> If injustice has been worked in this case, it is not the rigid express waiver standard that bears the blame, but the doctrine of sovereign immunity itself. But it is too late in the day, and certainly beyond the

competence of this court, to take issue with a doctrine so well-established. That justice may be done beyond this proceeding— that [the Kiowa], by raising the shield of sovereign immunity expressly to avoid an obligation it voluntarily assumed and promised to fulfill, may have alienated [other parties] on which it must rely— these are consequences we do not doubt. Nevertheless[,] *Santa Clara Pueblo* and its lineage compel us to conclude that nothing short of an express an unequivocal waiver can defeat the sovereign immunity of an Indian nation.

*Standing Rock Sioux Tribe,* 780 F.2d at 1379.

## CONCLUSION

Presented with no express waiver of sovereign immunity, this court must acquiesce to the Tribe's protestations. Defendant Kiowa Tribe of Oklahoma a/k/a Kiowa Indian Nation's Motion to Dismiss under Rule 12(b)(1) is GRANTED.

---

**2.** Plaintiff similarly argues without citation that: Despite the fact that the courts have often referred to Indian tribes as "domestic independent nations," no case has ever held that the Foreign Sovereign Immunities Act is inapplicable to Indian tribes. Furthermore, Defendants' Motion to Dismiss fails to cite a single case in support of this argument.
Opposition at 4–5. Notwithstanding the fact that the burden of production on this issue rests with the party asserting jurisdiction, *Bradley v. U.S. Dep't of Commerce,* 598 F.Supp. 38, 39

(N.D.Tex.), *aff'd,* 750 F.2d 66 (5th Cir.1984), the court refers Plaintiff to the extended discussion of that issue in *State v. Seneca–Cayuga Tribe of Oklahoma,* 711 P.2d 77, 83 n. 27 (Okla.1985), cited by the Tribe in their Motion at page 2. *See also Morgan v. Colorado River Indian Tribe,* 103 Ariz. 425, 443 P.2d 421, 424 n. 1 (1968) (noting that "unique legal status enjoyed by the Indian tribes" compelled dismissal of personal-injury action even though similarly-situated Foreign, Federal, State or Local government would face liability).