TOHONO O'ODHAM NATION, and
Tohono O'odham Housing
Authority, Plaintiffs,

v.

The Honorable Jonathan H. SCHWARTZ,
Maricopa County Superior Court, Division 61, and Canyon Contracting Company, Defendants.

No. CIV 92–2422–PHX–SMM.

United States District Court,
D. Arizona.

Sept. 16, 1993.

David P. Frank, Office of the Atty. Gen. of Tohono O'odham Nation, Sells, AZ, for plaintiff Tohono O'odham Nation.

Daniel W. Hester and Thomas L. LeClaire, Fredericks & Pelcyger, Boulder, CO, for plaintiff Tohono O'odham Housing Authority.

Mary Jane Gregory, Ariz. Atty. General's Office, Phoenix, AZ, for defendant Schwartz.

Guy William Bluff, Virginia Lee Varner, Guy Bluff, P.C., Phoenix, AZ, for defendant Canyon Contracting Co.

## MEMORANDUM OF DECISION AND ORDER

McNAMEE, District Judge.

Canyon Contracting Company ("Canyon"), a non-Indian contractor, filed suit against the Tohono O'odham Housing Authority ("TOHA") in state court for an alleged breach of contract involving an Indian housing project on the Tohono O'odham Reservation. Canyon, as a party of the state court action, sought a writ of execution against an off-reservation bank account to satisfy an award of attorney's fees from a denial of TOHA's petition for a Writ of Special Action in the Arizona Court of Appeals. The Tohono O'odham Nation ("the Nation") and TOHA obtained a temporary restraining order from this Court restraining the writ of execution and further proceedings in state court. After a hearing on the motion for preliminary injunction, TOHA and the Nation requested that the injunction be made permanent.

## I. BACKGROUND

The Tohono O'odham Nation is a federally recognized Indian tribe, organized pursuant to Section 16 of the Indian Reorganization Act of 1934, 25 U.S.C. § 476 *et seq.* (1982), and occupies a reservation in south central Arizona known as the Tohono O'odham Reservation. The sovereign powers, authority, and jurisdiction of the Nation extend to all lands within the Reservation and to all persons and activities carried on within the Reservation. Constitution of the Tohono O'odham Nation Art. I §§ 1, 2. The legislative power of the Nation is vested in the Tohono O'odham Legislative Council. *See Id.* at Art. V, § 1. The judicial power of the Nation is vested in the Tohono O'odham Tribal Courts. *See Id.* at Art. VIII, I §§ 1, 2.

The Tohono O'odham Housing Authority is a governmental agency of the Nation, created in 1962 by the Legislative Council of the Tohono O'odham Nation, and organized pursuant to tribal ordinance to address and administer the housing needs of tribal members on the Reservation. *See* Tohono O'odham Ordinance No. 56, Art. I and II. In accordance with the United States Housing Act of 1937, 42 U.S.C. § 1437, *et seq.*, the TOHA has the power to contract with and to borrow money from HUD for the purpose of constructing housing for tribal members on the Reservation. As an arm of the tribal government, all of TOHA's property is considered public property of the Nation.

TOHA undertook to develop a federally funded housing project ("Project") on the Reservation consisting of 144 homes on scattered sites throughout the Reservation in 1982. The homes were to be occupied by tribal members and paid for by the TOHA. In February 1982, TOHA (then known as the Papago Housing Authority) contracted with Canyon's predecessor-in-interest, Miles–Canyon Joint Venture, for the construction of the 144 homes on the Reservation. In 1983, disputes under the contract arose as the Project neared completion which resulted in litigation between Canyon and TOHA.

## II. PROCEDURAL HISTORY

In 1984, Canyon filed a breach of contract suit in Maricopa County Superior Court against TOHA and the architect/engineer for the Project seeking monies retained by TOHA in the amount of $341,641.33 and damages in the amount of $179,659.41. Very early on, this case (Civil Action No. C506736) was dismissed without prejudice.

In May 1988, Canyon filed a subsequent suit against TOHA in Maricopa County Superior Court (Civil Action No. 88–13562). The complaint asserts that $31,913.00 is being wrongfully retained by TOHA under the contract to construct 144 housing units on the Reservation and that alleged delays in construction by TOHA caused $179,659.41 in damages to Canyon. TOHA filed a motion to dismiss Canyon's complaint for lack of subject matter jurisdiction in December 1988. The Honorable Daniel E. Nastro denied TOHA's motion to dismiss in February 1989. Subsequently, Canyon was granted partial

summary judgment on the issue of subject matter jurisdiction. However, the court denied Canyon's motion for partial summary judgment on the issues of liability and damages for the $31,913.00 claim on retained funds.

TOHA filed a Petition for a Writ of Special Action in the Arizona Court of Appeals requesting an order dismissing the state court action for lack of subject matter jurisdiction in March 1989. The Nation filed a brief as amicus curiae in the Special Action objecting to the Superior Court's assumption of subject matter jurisdiction. The Arizona Court of Appeals subsequently declined to accept jurisdiction over the Special Action, thereby expressing no opinion on the issue of the Superior Court's assumption of subject matter jurisdiction. Canyon was awarded attorney's fees which serve as the underlying basis for Canyon's writ of execution.

TOHA and Canyon then initiated settlement negotiations. Shortly thereafter, in June 1989, the parties reached what was believed by TOHA to be a final and complete settlement of the entire litigation. After a disagreement developed over the settlement, TOHA filed a motion in Superior Court to compel the enforcement of the settlement agreement. The Honorable Paul A. Katz of the Superior Court entered an order finding a valid and binding settlement of the entire litigation in May 1990. Canyon's motion for reconsideration of Judge Katz's order was denied in July 1990. The Superior Court entered judgment affirming the settlement agreement and ordered the case dismissed with prejudice in September 1990.

Canyon appealed the Superior Court's order of settlement and dismissal. In July 1992, the Arizona Court of Appeals filed its opinion concluding the settlement agreement was not valid because Canyon had not executed the agreement nor assented to its terms. The Court of Appeals remanded the matter to the Superior Court for a determination of Canyon's original claims for retained monies and delay damages. On remand, the case was assigned to the Honorable Jonathan H. Schwartz. The Superior Court trial set for May 10, 1993 has been temporarily enjoined pending the outcome of this action in federal court. Canyon contends that this Court is without jurisdiction to enjoin the state court proceedings.

## III. APPLICABILITY OF THE AUTOMATIC STAY TO THIS ACTION

■ After this Court entered the temporary restraining order and while the Court was considering whether to enter a permanent injunction, Canyon filed a petition with the United States Bankruptcy Court of the District of Arizona. Accordingly, the first issue this Court must decide is whether this proceeding must be stayed pending the outcome of Canyon's action in the Bankruptcy Court.

Clearly, under Section 362(a) of the Bankruptcy Code, the filing of a Chapter 11 bankruptcy petition automatically stays all actions or proceedings which have been brought "against the debtor." 11 U.S.C. § 362(a). Notably, however, the statute does not specify whether actions which have been brought by the debtor are stayed as well. Further, the circuit courts which have addressed this question have held that the automatic stay applies only to actions brought against the bankrupt, not to those brought by the bankrupt. *See e.g., Martin–Trigona v. Champion Federal Savings and Loan Ass'n,* 892 F.2d 575, 577 (7th Cir.1989); *In re Berry Estates, Inc.,* 812 F.2d 67, 71 (2d Cir.1987). Accordingly, the Court finds that this action need not be stayed because of Canyon's bankruptcy.

## IV. DISCUSSION

### A. JURISDICTION OF THIS COURT

The next issue the Court must address is whether it has jurisdiction over this action.

### 1. GENERALLY

The jurisdiction of this Court is invoked by the Nation and the TOHA pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1362 (Indian tribes), and 28 U.S.C. §§ 2201–2202 (declaratory judgment).

■ Despite Canyon's assertion to the contrary, federal courts do have jurisdiction

and authority to enjoin state court proceedings when it is necessary to preserve the integrity of Indian sovereignty. *White Mountain Apache Tribe v. Smith Plumbing Co.*, 856 F.2d 1301, 1304–1306 (9th Cir.1988). 28 U.S.C. § 1362 provides that "[t]he district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws or treaties of the U.S." 28 U.S.C. § 1362.

█ Canyon contends that the Ninth Circuit's ruling in *Navajo Tribal Utility Authority v. Arizona Dept. of Revenue*, 608 F.2d 1228 (9th Cir.1979), precludes this Court from asserting jurisdiction in this case. In *Navajo Tribal Utility Authority*, the Ninth Circuit held that a "subordinate, economic enterprise," in that case an Indian entity, constituted an Indian tribe or band within the meaning of 28 U.S.C. § 1362, and, thus, there was no jurisdiction in the district court. *Id.* at 1229–1233. The Circuit Court went on to opine, however, that the result would have been different if the Tribe would have been a co-plaintiff in the action. *Id.* at 1234. In the present case, the Nation is a co-plaintiff with TOHA. Canyon's broad, preclusive jurisdictional interpretation is neither supported by *Navajo Tribal Utility Authority* nor by 28 U.S.C. § 1362. Because the Tribe brought this action in conjunction with TOHA, this Court has jurisdiction over this action.

### 2. ANTI–INJUNCTION ACT

█ Canyon's next contention that the Anti–Injunction Act, 28 U.S.C. § 2283 (1982), precludes this Court from exercising its jurisdiction in this case is unpersuasive. Section 2283 provides that federal courts "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. 1360(b) (1982 & Supp. II 1985).

The Nation and TOHA's request for injunctive relief falls within the second exception. Strong federal policy encourages tribal self-government and tribal self-sufficiency.

*California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216–17, 107 S.Ct. 1083, 1092, 94 L.Ed.2d 244 (1987). "Indian tribes are "distinct, independent political communities, retaining their original natural rights' in matters of local self-government," over both their members and their territory. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55, 98 S.Ct. 1670, 1675, 56 L.Ed.2d 106 (1978) (citing *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 559, 8 L.Ed. 483 (1832)); *see also Johnson v. McIntosh*, 21 U.S. (8 Wheat), 543, 5 L.Ed. 681 (1823); *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1831); *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083; *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). Courts have consistently determined that the interpretation of Indian law is a matter of federal law. Accordingly, there is no bar of this action pursuant to the Anti–Injunction Statute, 28 U.S.C. § 2283.

### 3. ABSTENTION DOCTRINE

Next, Canyon argues that, even if this Court could exercise jurisdiction over this matter, it should abstain from doing so and let the state court action proceed.

█ Generally, under the abstention doctrine, federal courts should exercise restraint before interfering with ongoing proceedings in state court. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The abstention doctrine is not an absolute prohibition to the federal courts exercise of jurisdiction. *Id.* Instead, it is a matter of discretion. *Id.*

In *Younger*, the Supreme Court stated that federal courts should not enjoin a state court criminal proceeding "except in very unusual situations, where necessary to prevent immediate irreparable injury." *Younger*, 401 U.S. at 40, 91 S.Ct. at 748. The principle underlying *Younger* has been extended to noncriminal proceedings when important state interests are involved. *Moore v. Sims*, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); *Huffman v.*

*Pursue, Ltd.,* 420 U.S. 592, 604–605, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975).

■ The Supreme Court articulated three requirements for the proper invocation of the *Younger* abstention doctrine in a civil action: (1) an ongoing state proceeding; (2) the implication of important state interests in that proceeding; and (3) an adequate opportunity in the state proceedings to raise federal questions. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). In the present case, there is no important state interest at stake. However, there are important federal questions which cannot be adequately addressed in the state proceedings. Therefore, the Court finds that invoking the abstention doctrine in this instance would be inappropriate.

## B. MERITS

Having determined that this Court has jurisdiction, the next issue before the Court is whether the state court has jurisdiction over the underlying action. If the state court lacks jurisdiction, this court must enjoin the state court action in order to preserve tribal sovereignty. *See e.g., White Mountain Apache,* 856 F.2d at 1304–1306.

■ State courts are precluded from exercising jurisdiction over Indians for causes of action arising in Indian country unless there is an express grant of authority to exercise jurisdiction from Congress. *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); *Bryan v. Itasca County,* 426 U.S. 373, 376 n. 2, 96 S.Ct. 2102, 2105 n. 2, 48 L.Ed.2d 710 (1976); *McClanahan v. Tax Commission of Arizona,* 411 U.S. 164, 170–171, 93 S.Ct. 1257, 1261, 36 L.Ed.2d 129 (1973). In *Williams,* the Supreme Court explained that "[t]he cases in this court have consistently guarded the authority of Indian governments over their reservations ... [and] [i]f this power is to be taken away from them, it is for Congress to do it." *Williams,* 358 U.S. at 223, 79 S.Ct. at 272.

Congress provided the exclusive means by which state courts may assert civil jurisdiction over certain actions arising in Indian country when it enacted Public Law 280.

*See* P.L. 280, 28 U.S.C. § 1360; *Three Affiliated Tribes of the Fort Berthold v. Wold Engineering,* 476 U.S. 877, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986) (discussing state court jurisdiction in a state in which Public Law 280 had been adopted). Arizona has not adopted Public Law 280, and the Arizona Court of Appeals has held that because Arizona has not adopted Public Law 280 it "may not exercise subject matter jurisdiction over transactions arising on Indian reservations." *Nenna v. Moreno,* 132 Ariz. 565–566, 647 P.2d 1163–1164 (App.1982); *see Enriquez v. Superior Court,* 115 Ariz. 342, 565 P.2d 522 (App.1977) (Arizona court lacked jurisdiction over an action brought by non-Indian party against a reservation Indian on the Tohono O'odham Reservation for injuries sustained in a car accident on the Reservation).

■ Furthermore, federal law mandates that Canyon should have originally brought this action in tribal court for a determination of tribal court jurisdiction. *See National Farmers Union Ins. Companies v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); *see also A & A Concrete, Inc. v. White Mountain Apache Tribe,* 781 F.2d 1411, 1418 (9th Cir.1986), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986). Tribal courts have inherent power to adjudicate civil disputes affecting important personal and property interests of both Indians and non-Indians which are based upon events occurring on the Reservation. *Montana v. United States,* 450 U.S. 544, 565–66, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981); *Santa Clara Pueblo,* 436 U.S. at 65, 98 S.Ct. at 1680; *see also Fisher v. District Court of Sixteenth Jud. Dist.,* 424 U.S. 382, 387–88, 96 S.Ct. 943, 947, 47 L.Ed.2d 106 (1976). "The power to hear and adjudicate disputes arising on Indian land is an essential attribute of [tribal] sovereignty." *Weeks Construction, Inc. v. Oglala Sioux Housing Authority,* 797 F.2d 668, 673 (8th Cir.1986). This action is founded upon disputes between Canyon and TOHA concerning the construction of homes on the Tohono O'odham Indian Reservation, which were to be occupied by tribal members and paid for by the TOHA. Consequently, by entering into a contractual relationship with TOHA on

a tribal project, Canyon must have known that the tribal courts would first need to determine jurisdiction over any subsequent dispute.

The exercise of jurisdiction by the state court in this instance would encroach upon tribal self-government and is thereby preempted. *Iowa Mutual,* 480 U.S. at 14–15, 107 S.Ct. at 975; *Cabazon Band of Mission Indians,* 480 U.S. at 216–17, 107 S.Ct. at 1092; *see New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 334–335, 103 S.Ct. 2378, 2387, 76 L.Ed.2d 611 (1983). The Ninth Circuit has explained that "it would violate the right of tribal self-government for a state court to take jurisdiction over a suit against an Indian arising on a reservation, for the state court's judgment might be utterly irreconcilable with any parallel tribal-court jurisdiction and judgment." *White Mountain Apache Tribe v. State of Ariz.,* 649 F.2d 1274, 1284 n. 12 (9th Cir.1981) (citing *Fisher,* 424 U.S. 382, 96 S.Ct. 943; *Williams,* 358 U.S. 217, 79 S.Ct. 269).

Indeed, a tribe's immunity from the control of state and local government is strongest in cases where, as here, a state attempts to assert jurisdiction over Indians arising out of activities occurring within reservation boundaries. *See e.g., Williams,* 358 U.S. 217, 79 S.Ct. 269; *United States v. John,* 437 U.S. 634, 98 S.Ct. 2541, 57 L.Ed.2d 489 (1978); *Fisher,* 424 U.S. 382, 96 S.Ct. 943; *Kennerly v. District Court of Ninth Judicial Dist. of Mont.,* 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971). In holding that state court jurisdiction contravenes firm federal policy promoting tribal self-government and encouraging tribal self-sufficiency and economic development, the Supreme Court reasoned as follows:

> There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves. . . .

*Williams,* 358 U.S. 217, 223, 79 S.Ct. 269, 272; *See also Crow Tribe of Indians v. Montana,* 819 F.2d 895, 898 (9th Cir.1987), *aff'd,* 484 U.S. 997, 108 S.Ct. 685, 98 L.Ed.2d 638 (1988) (if the state law interferes with the purpose or operation of a federal policy regarding tribal interests, it is preempted). Consequently, the assertion of state court jurisdiction would nullify the authority of the Tohono O'odham Tribal Court to adjudicate civil matters against Indians and Indian entities arising in Indian country. Thus, Canyon improperly brought this action in state court prior to exhaustion of the issues in tribal court.

Canyon asserts that despite the general rule barring state court jurisdiction in this area, the state court does have jurisdiction in this case for the following reasons:

(1) TOHA is not a tribal entity;

(2) TOHA and the Nation waived their sovereign immunity;

(3) the current dispute arose from TOHA's activities off the Reservation which subjects TOHA to the jurisdiction of state court;

(4) TOHA's delay in seeking injunctive relief amounts to consent to subject matter jurisdiction in state court;

(5) TOHA's motive for enjoining the state court action gave the state court jurisdiction; and

(6) at the time of the alleged breach of contract, there was no tribal court jurisdiction under the Nation's Constitution, and the lack of tribal court jurisdiction creates jurisdiction in state court.

The Court will address each of these alternative bases forwarded by Canyon in support of its argument that the state court has jurisdiction.

## 1. TOHA IS A TRIBAL AGENCY

■ Canyon's first argument is that TOHA is a non-Indian entity. Canyon asserts that since the underlying state court action involves Canyon and TOHA, two non-Indian entities under Canyon's view of the facts, the state court has jurisdiction.

Canyon is correct that the state court would have jurisdiction over this action if both parties were non-Indians. However, such is not the case.

TOHA was created in 1962 by the Legislative Council of the Nation, and it was organized pursuant to tribal ordinance to address and administer the housing needs of tribal members on the Reservation. Federal regulations state that an Indian Housing Authority may be established pursuant to state law or pursuant to tribal ordinance. 24 C.F.R. §§ 905.125, 905.126 (1992). Federal courts which have addressed the issue have specifically ruled that a tribal housing authority established by a tribal council pursuant to the Tribe's powers of self-government is a tribal agency. *Weeks Construction, Inc. v. Oglala Sioux Housing Authority,* 797 F.2d 668 (8th Cir.1986); *see also United States v. Turtle Mountain Housing Authority,* 816 F.2d 1273, 1276 (8th Cir.1987) ("Housing Authority is an agency formed by the Tribe for the purpose of pursuing functions intimately related to tribal self-government.").

Thus, the housing authority is a tribal agency, and as an arm of tribal government, it possesses inherent attributes of tribal sovereignty. *Weeks,* 797 F.2d 668, 671.

### 2. "SUE AND BE SUED" CLAUSE

 Canyon nonetheless contends that state court jurisdiction over this action exists because the "sue and be sued" clause contained in the Tribal Ordinance chartering the Housing Authority represents a waiver of sovereign immunity, and, therefore, this clause acts as TOHA's consent to be sued in any forum. Canyon bases this proposition on the following provision within the ordinance creating the TOHA:

> The Tribal Council hereby gives it irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract, claim or obligation arising out of its activities under this ordinance and hereby authorizes the Authority to agree by contract to waive any immunity from suit which it might otherwise have; but the Tribe shall not be liable for the debts or obligations of the Authority.

Tohono O'odham Ordinance No. 56, Article V, Section 2. This provision was taken from HUD's prescribed regulation, which is required for the Nation to qualify for HUD financial assistance, comprising a part of the federally-established procedures for establishment of Indian Housing Authorities by tribal ordinance. *See* 24 C.F.R. § 905.109, and subpart A., app. I (1990).

The Nation and TOHA do not dispute that TOHA is amenable to suit. However, they assert that the waiver of sovereign immunity does not automatically confer subject matter jurisdiction on the state court.

Canyon relies on state court decisions that appear to treat sovereign immunity and subject matter jurisdiction as one in the same. However, Canyon's position that TOHA's waiver of sovereign immunity equates to a waiver of subject matter jurisdiction is not persuasive. Interpretation of tribal sovereignty is a matter of federal law, and Canyon's suggestion that this Court look to state law in interpreting tribal sovereignty is without merit.

A housing authority's waiver of sovereign immunity cannot render it universally amenable to action in any forum that a plaintiff selects. *See Weeks,* 797 F.2d 668, 671; *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 n. 11 (9th Cir.1989). Rather, a waiver only renders a housing authority amenable to suit in a court of competent jurisdiction. *Id.* at 671–672.

In *Weeks,* a non-Indian contractor brought an action in state court against a tribal member for a contract dispute arising on the Reservation. 797 F.2d 668. The non-Indian contractor argued that the Housing Authority's "sue and be sued" clause, a clause nearly identical to the language in Tohono O'odham Ordinance No. 56, Art. V § 2, constituted a consent to be sued in any forum. The court in *Weeks* expressly rejected the non-Indian contractor's argument stating:

> [t]he Housing Authority's waiver of sovereign immunity under the tribal ordinance's "sue and be sued" language does not by fiat confer jurisdiction on the federal courts ... [and the] [m]ere consent to be sued, even consent to be sued in a particular court, does not alone confer jurisdiction upon that court to hear a case if that court would not otherwise have jurisdiction over the suit [citation omitted].... The Housing Authority's waiver only nullifies the

Housing Authority's use of sovereign immunity as a possible defense to Week's breach of contract action.

*Weeks,* 797 F.2d 668, 671–72.

In this instance, as discussed *supra,* the court that must make the initial determination of whether there is competent jurisdiction to hear the dispute between Canyon and TOHA is the tribal court.

## 3. LOCUS OF DISPUTE BETWEEN TOHA AND CANYON

■ Canyon next argues that the current dispute arises out of activities which TOHA was involved in off the Reservation, and therefore TOHA is subject to the jurisdiction of the state court.

It is true that tribal activities off the reservation present different considerations not heretofore discussed. *See Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973). The Supreme Court has held that states have more authority over activities involving Indians when the activities occur off the reservation. *Id.* In fact, "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State." *Id.* at 148–149, 93 S.Ct. at 1270. Accordingly, if the Court were to find that the activities giving rise to the dispute in this case took place off the reservation, then it is likely the state court would have jurisdiction over the underlying action.

Canyon argues that because the contract was negotiated and executed off the Reservation, the locus of the contract dispute is off the reservation.

The Court disagrees. The Ninth Circuit has adopted the Montana Supreme Court's ruling that an Indian may be subject to jurisdiction in state court if the Indian is involved in a transaction in which there are " 'significant contacts with the state outside the reservation boundaries.' " *R.J. Williams Co. v. Belknap Housing Auth.,* 719 F.2d 979, 982 (9th Cir.1983) (quoting *Crawford v. Roy,* 176 Mont. 227, 577 P.2d 392, 393 (1978)). In determining the locus of a contract dispute

for the purpose of evaluating whether the transaction involved significant contacts with the state outside the reservation boundaries, the court in *R.J. Williams* evaluated the following factors: (1) where the contract was executed; (2) where the contract was negotiated; (3) where the contract was performed; (4) where the subject matter of the contract is located; and (5) where the parties reside. *R.J. Williams,* 719 F.2d at 985 (citing Restatement (Second) of Conflict of Laws § 188(2) (1971)). The court further stated that each factor should be evaluated in accordance to its relative importance in the dispute. *Id.* In particular, the court stated that "when a contract concerns a particular thing, such as land or chattel, the location of the thing is regarded as highly significant." *Id.*

In *R.J. Williams,* a contractor had contracted with an Indian housing authority to build single-family homes on the reservation. *Id.* In that case, the Ninth Circuit ruled that an Indian housing authority contracting with a non-Indian was not involved in a transaction with significant contacts with the state sufficient to subject the Indian housing authority to state court jurisdiction. *Id.*

In the present case, although the contract was negotiated and executed by the parties off the Reservation, the performance of the contract occurred exclusively within the confines of the Reservation. Indeed, the facts in this case are strikingly similar to the facts in *R.J. Williams.* 719 F.2d 979. Similarly, the dispute here concerns the construction of homes on the Reservation, which was to be paid for by TOHA and occupied by tribal members. Accordingly, the Court finds that the locus of the dispute in this case was on the Reservation, and the transaction did not involve significant contacts with the state off the reservation. In making this determination, the Court finds it particularly important that the subject of the contract is within the confines of the Reservation and the substance of the contract was performed within the confines of the Reservation.

## 4. DELAY IN SEEKING INJUNCTIVE RELIEF

■ Canyon asserts that TOHA's delay in seeking injunctive relief from this Court

constitutes consent to state court jurisdiction. This assertion is not well-taken. As previously stated, subject matter jurisdiction cannot be waived. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 n. 2 (9th Cir.1988).

Also, the Court notes that since this initial filing of this cause of action in state court, TOHA has never conceded to subject matter jurisdiction. The record indicates that TOHA challenged the state court's subject matter jurisdiction, but its challenge was denied. TOHA was therefore forced to defend itself on the merits. Later, when the parties had reached what TOHA thought was a binding settlement, there did not appear to be a need to expend the costs of filing an action in federal court. In choosing to rely on the settlement agreement, TOHA did not consent to subject matter jurisdiction.

 Also, the Court recognizes that subject matter jurisdiction may be raised at any time during a proceeding by a party to the suit or the court. Fed.R.Civ.P. 12(h)(3); *Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 2 L.Ed. 229 (1804); *Emrich*, 846 F.2d at 1194 n. 2. Thus, there is nothing inappropriate about TOHA and the Nation raising the state court's lack of subject matter jurisdiction at this time, nor will their failure to raise the issue earlier deprive them of relief.

### 5. TOHA'S MOTIVE IN SEEKING TO ENJOIN STATE ACTION

Canyon argues it does not need to exhaust issues in tribal court because TOHA and the Nation have only sought to enjoin the state court action in order to harass Canyon. *See National Farmers*, 471 U.S. 845, 856 n. 21, 105 S.Ct. 2447, 2454 n. 21. Canyon's argument is faulty. It is not the motivation of TOHA that is at issue here. It was Canyon who circumvented the tribal court by bringing an action in state court. TOHA has a legitimate right to seek relief in the district court in a case such as this which belongs in tribal court. The heart of the matter involves tribal sovereignty, not TOHA and Nation's motives for enforcing their rights.

### 6. JURISDICTION OF THE TRIBAL COURT

The Tohono O'odham Constitution has been amended a number of times since the cause of action arose. Canyon argues that at the time of the alleged breach of contract there was no tribal court jurisdiction under the Nation's Constitution. Canyon further argues that if there is no tribal court jurisdiction, then there is state court jurisdiction.

A question may exist as to which version of the Nation's Constitution is applicable and whether the tribal court would have jurisdiction over the underlying action. However, these are not questions which should be answered by this Court.

 The question of tribal court jurisdiction should be determined, in the first instance, by the tribal court. *National Farmers*, 471 U.S. at 856, 105 S.Ct. at 2453; *see also A & A Concrete*, 781 F.2d 1411. It is also tribal court who should first determine which version of its constitution applies and whether the applicable constitution provides for jurisdiction in this case. *R.J. Williams*, 719 F.2d at 983 (court declined to interpret tribal ordinance, finding that such interpretation should be left to the province of the tribal court).

Finally, the question of what will happen in this case if the tribal court determines it does not have jurisdiction is not a ripe issue before this Court.

## V. JUDICIAL IMMUNITY

 To the extent that Canyon seeks an award of costs and attorneys' fees, Judge Schwartz of the Maricopa County Court is absolutely immune from liability pursuant to the doctrine of judicial immunity. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Acevedo v. Pima County Adult Probation Department*, 142 Ariz. 319, 690 P.2d 38 (1984). Thus, Judge Schwartz is not liable for the performance of judicial acts, and no monetary awards can be imposed against him.

## VI. CONCLUSION

 There exists in every business venture an inherent risk that some aspect of the agreement may go awry. Canyon undertook this chance when it chose to contract with

**1034**

TOHA. Furthermore, since Canyon knew that it was entering into a contractual relationship with TOHA on a tribal project, it must have known that the tribal courts had jurisdiction to hear any dispute. Although Canyon did not originally bring this action in tribal court, where it should have originated, Canyon is not without a remedy as it can now bring this action in the Tohono O'odham Tribal Court.

Federal policies prohibits state infringement of federally protected rights of self-government and self-determination. If the state court action is permitted to continue, it will violate federal Indian law and the policy of preempting state court jurisdiction over Indian tribes. The harm to the Nation's sovereignty cannot be remedied by any other relief other than an injunction precluding the state court action from proceeding.

Thus, in order to preserve the Nation's sovereignty, and to further the strong federal policy of preventing infringement of the Nation's right to self-government,

**IT IS THEREFORE ORDERED** that the temporary restraining order rendered and entered on February 4, 1993 is hereby made permanent. Canyon Contracting Company is hereby permanently restrained and enjoined from proceeding with the state court action entitled *Canyon Contracting Company v. Tohono O'odham Housing Authority,* Maricopa County Superior Court No. CV 88–13562.

**IT IS FURTHER ORDERED** that Canyon Contracting is hereby restrained and enjoined from proceeding with or otherwise enforcing the Writ of Garnishment or any other post judgment relief or action arising from the state court proceeding or any appeals taken therefrom.

**IT IS FURTHER ORDERED** that the state court action entitled *Canyon Contracting Company v. Tohono O'odham Housing Authority,* Maricopa County Superior Court No. CV 88–13562, is hereby enjoined.

**IT IS THEREFORE ORDERED** that Canyon's motion to exceed the page limit in its response to the motion for a temporary restraining order and motion for a preliminary injunction is granted **(Doc. # 11–1).**

**IT IS FURTHER ORDERED** that the motion requesting a pre-trial settlement conference is denied as moot **(Doc. # 15).**