FILED
United States Court of Appeals
Tenth Circuit

February 11, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CHEYENNE AND ARAPAHO TRIBES,
on its own behalf and as parens patriae on
behalf of its members; CHEYENNE
AND ARAPAHO TRIBES'
EXECUTIVE BRANCH,

       Plaintiffs−Appellants,

v.

FIRST BANK & TRUST COMPANY;
DOUG HAUGHT, in his official capacity
as a District Judge, State of Oklahoma,

       Defendants−Appellees.

No. 13-6117
(D.C. No. 5:12-CV-00514-F)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**BACHARACH**, Circuit Judge.

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The Cheyenne and Arapaho Tribes ("Tribes") and the Cheyenne and Arapaho Tribes' Executive Branch ("Executive Branch") (together with the Tribes, "Plaintiffs"), appeal from the district court's orders and judgments dismissing their claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

In February 2011, the Tribes opened accounts with defendant First Bank & Trust Company ("First Bank"). At the time, Janice Prairie Chief-Boswell ("Boswell") was the Tribes' governor. Boswell signed the contracts and signature cards, and she was the sole signatory on the accounts, which held some $7 million in funds that the federal government, the State of Oklahoma, and the Tribes had appropriated for the administration of various programs. After an intra-tribal controversy arose regarding whether the Tribes' governor was Boswell or Leslie Wandrie-Harjo ("Harjo"), First Bank filed an action in the District Court of Custer County, Oklahoma. First Bank sought a declaration as to whether it should recognize Boswell or Harjo as the authorized signatory on the Tribes' accounts, and a declaration absolving it from liability concerning signatory authority for the accounts. The case was assigned to the Honorable Doug Haught, also a defendant in this matter. In addition to the Tribes, First Bank named Boswell and Harjo as defendants in their representative capacities, if any.

In April 2012, an attempt to transfer the Tribes' funds to another institution caused First Bank to place an administrative freeze on the accounts pending a

decision from Judge Haught.  In June 2012, Judge Haught denied First Bank's request for declaratory relief.  He ruled that the Tribes had waived their sovereign immunity from state-court jurisdiction by signing contracts with First Bank subjecting the accounts to Oklahoma law, but he concluded that the state court lacked jurisdiction to resolve the gubernatorial dispute because it was a matter exclusively for the tribal courts.  Judge Haught converted the Tribes' accounts to court-supervised accounts, directing First Bank not to dispense any of the funds except on the court's order.  That decision is presently on appeal.  Judge Haught later denied First Bank's motion to close the accounts on the ground that he was prohibited from determining whether to release the funds to Boswell or Harjo.

Meanwhile, on May 4, 2012, Plaintiffs filed the action underlying this appeal against First Bank and Judge Haught in his official capacity (collectively, "Defendants").  Plaintiffs asserted eleven claims in the operative pleading.  Claims 1-3 and 6 asserted that, through the administrative freeze and the state court action, Defendants violated various federal constitutional rights and Plaintiffs' tribal sovereign immunity.  Claim 4 alleged that Defendants violated Plaintiffs' right to be free from state interference with their sovereignty as secured by treaties with the United States.  Claim 5 asserted unspecified violations of the Oklahoma Enabling Act,[1] and Claim 7 asserted a state-law claim that First Bank had intentionally

---

[1] The Oklahoma Enabling Act is a federal law passed in 1906 that "enable[d] the people of Oklahoma and of the Indian Territory to form a constitution and State

(continued)

interfered with the Tribes' contracts with the federal government and the State of Oklahoma. In Claims 1-7, Plaintiffs sought damages. Claim 1 specifically referenced 42 U.S.C. § 1983; Claims 2-6 did not reference § 1983 or any other cause of action. In Claim 11, Plaintiffs asked for attorneys' fees under 42 U.S.C. § 1988.

In addition to their damages claims, Plaintiffs sought in Claim 8 an injunction against the administrative freeze, any charges related to it, First Bank's continued prosecution of the state court action, and Judge Haught's continued exercise of jurisdiction over the state court action. In Claim 9, they sought declarations that the administrative freeze violated the rights asserted in Claims 1-6, was in excess of First Bank's authority, and interfered with the Tribes' right to govern themselves. In Claim 10, they sought declarations that Judge Haught's continued handling of the state court action exceeded his jurisdiction and that Defendants' use of state court process violated Plaintiffs' rights, privileges, and immunities secured by the United States Constitution and federal law, specifically their tribal sovereign immunity. The claims for declaratory relief referenced the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, but the claim for injunctive relief did not specify any particular basis of authority.

After the federal district court denied Plaintiffs' motion for preliminary relief, Defendants filed motions to dismiss, which the court granted. As to Judge Haught,

government and be admitted into the Union on an equal footing with the original States." Ch. 3335, 34 Stat. 267, 267 (1906).

the court first ruled that Plaintiffs' federal claims for damages (Claims 1-4 and 6) were brought under 42 U.S.C. § 1983 and barred by the Eleventh Amendment's grant of sovereign immunity to the states. The court determined that to the extent the claim for injunctive relief against Judge Haught (Claim 8) was brought under § 1983, Plaintiffs had not established either of the statutory conditions that permit such relief against a judicial officer—that "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. The court also relied on the Anti-Injunction Act, 28 U.S.C. § 2283 ("AIA").

The district court next concluded that Plaintiffs were not "persons" authorized to bring an action under § 1983 because they sought to enforce a sovereign interest— tribal sovereign immunity. Therefore, they could not sue under § 1983 in parens patriae, which requires the assertion of a quasi-sovereign interest, and their claim for declaratory relief against Judge Haught (Claim 10) failed to the extent it was based on § 1983 and brought under Ex Parte Young, 209 U.S. 123 (1908).[2] The court further concluded that the Executive Branch had not demonstrated it was an entity separate from the Tribes and entitled to bring a § 1983 action. It dismissed Plaintiffs' claim against Judge Haught for declaratory relief to the extent it was based on 28 U.S.C. §§ 2201 (declaratory relief), 1331 (federal question), and 1362 (tribal

---

[2] Although the district court construed Claims 9 and 10 as seeking declaratory relief against Judge Haught, Claim 9 is only nominally asserted against him; its allegations and requests are limited to First Bank.

plaintiff/federal question), holding that a declaration would have the same effect as an injunction barred by the AIA.

Turning to the claims against First Bank, the district court ruled that any § 1983 claims must be dismissed because First Bank was not a state actor. The court also concluded that the AIA barred claims for injunctive and declaratory relief insofar as those claims attacked First Bank's maintenance of the state court action. It further determined that Plaintiffs were not entitled to a declaration under 28 U.S.C. § 2201 that the administrative freeze was improper because the Fourth Amendment's protection against unlawful seizures applies only to governmental action.

Having concluded that all the substantive federal claims should be dismissed under either Fed. R. Civ. P. 12(b)(1) or (b)(6), the district court ruled that Plaintiffs were not entitled to attorneys' fees under § 1988, and it declined to exercise supplemental jurisdiction over any state-law claims.[3] Plaintiffs filed a motion for post-judgment relief under Fed. R. Civ. P. 59(e) and 60(b)(6), seeking vacatur or modification of the dismissal order. They argued that a § 1983 claim against Judge Haught was permissible because the state court proceeding was a nullity, that they had established federal question jurisdiction under 28 U.S.C. § 1331 and/or § 1362, and that the court should have dismissed their federal claims without prejudice so they could amend their pleadings to clarify that Claims 2-4 and 6 were not based

---

[3] The court included Claim 5 under the Oklahoma Enabling Act as one of the state-law claims over which it declined to exercise supplemental jurisdiction. Plaintiffs have not meaningfully challenged this disposition.

solely on § 1983. The district court denied Plaintiffs' motion for post-judgment relief except for clarifying that the dismissal of the § 1983 claims for monetary damages against Judge Haught was without prejudice. This appeal followed.

## II

Before considering the district court's rulings, we first must address Defendants' contention that Plaintiffs lack standing. Their argument is based on the intra-tribal gubernatorial dispute—this action was filed by the Tribes through an attorney general and assistant attorney general that Boswell had appointed, but Harjo unsuccessfully moved to intervene in this action through an attorney general she had appointed. Characterizing the Plaintiffs as Boswell and her attorney general, Harjo claimed that Plaintiffs were former tribal officials with no capacity to sue on the Tribes' behalf.[4] Similarly, Defendants argue that Plaintiffs lack standing absent proof that Boswell's attorney general was authorized to file the action.[5]

---

[4] The district court denied the motion to intervene as of right because the movants failed to show that the disposition of the case would impair or impede their interest, that the existing parties did not adequately represent their interests, or that Harjo was a necessary or indispensable party. The court denied the motion for permissive intervention because the movants failed to show they had a claim or controversy in common with the main action and did not provide a proposed pleading setting out the claim or defense for which they sought intervention.

[5] Although Defendants do not differentiate between the Tribes and the Executive Branch, they only assert that the attorney general representing the Tribes lacked authority due to the competing claim of Harjo's attorney general. The Executive Branch is represented by non-tribal attorneys and does not appear to assert any claims other than those the Tribes assert.

We express no opinion as to the proper representatives of the Tribes, but we reject Defendants' argument because Article III standing generally concerns the parties, not their representatives. See, e.g., Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013) (stating that Article III standing "requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision" (emphasis added)); id. at 2662 ("To have standing, a litigant must seek relief for an injury that affects him in a personal and individual way." (emphasis added) (quotation omitted)).

Defendants point to no authority, nor have we uncovered any, supporting the proposition that the authority of Boswell's attorney general affects the Tribes' standing. The only case Defendants rely on, Davis v. Hudson Refinery, 498 F. App'x 779, 782 (10th Cir. 2012) (unpublished), involved the dismissal of an action because an executor failed to show he was authorized to represent several estates. But in Davis, the party was the executor, not the estate. In this case, the Tribes and its Executive Branch, not Boswell's attorney general, are the parties. And Defendants do not argue that the Tribes lack standing, nor do we independently discern any reason to doubt that Plaintiffs satisfy the requirements of Article III. Instead, Defendants' argument concerns an intra-tribal matter that is subject to resolution exclusively by the tribal courts. See, e.g., Motah v. United States, 402 F.2d 1, 2 (10th Cir. 1968) (holding that "an internal controversy among Indians over tribal

- 8 -

government [is] a subject not within the jurisdiction of the [federal district] court as a federal question"). We therefore proceed to consider Plaintiffs' appellate arguments.

## III

We review de novo the district court's dismissal under Rule 12(b)(1) and (b)(6). Colo. Envtl. Coal. v. Wenker, 353 F.3d 1221, 1227 (10th Cir. 2004). On appeal, Plaintiffs have clarified that they do not seek money damages from Judge Haught but only release of the funds in their accounts. Accordingly, we need not address the district court's ruling that the Eleventh Amendment barred Claims 1-4 and 6 against Judge Haught. We also will not address Plaintiffs' first argument—that the district court erred in dismissing their property claims—because it concerns only the propriety of Judge Haught's conversion of the Tribes' accounts to court-supervised accounts. This argument might be properly asserted in an appeal from Judge Haught's rulings in the state case, but is not relevant to our resolution of this appeal.

## A

We agree with the district court that Plaintiffs are not "persons" within the meaning of § 1983, at least with respect to the claims directed at the state court action. "Section 1983 permits 'citizen[s]' and 'other person[s] within the jurisdiction' of the United States to seek legal and equitable relief from 'person[s]' who, under color of state law, deprive them of federally protected rights." Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1234 (10th Cir. 2010)

- 9 -

(alterations in original) (quoting 42 U.S.C. § 1983).  But a "Tribe may not sue under § 1983 to vindicate . . . sovereign right[s]."  Inyo Cnty., Calif. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony, 538 U.S. 701, 712 (2003) ("Inyo Cnty.").  Acknowledging this limitation, Plaintiffs contend that they brought their § 1983 claims, at least in part, in a parens patriae capacity, a standing doctrine that permits "a State to sue . . . to prevent or repair harm to its 'quasi-sovereign' interests," Hawaii v. Standard Oil Co., 405 U.S. 251, 258 (1972).

To bring a parens patriae action, a "State must express a quasi-sovereign interest."  Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez, 458 U.S. 592, 607 (1982) ("Snapp").  Quasi-sovereign interests "consist of a set of interests that the State has in the well-being of its populace."  Id. at 602.  They should be determined on a case-by-case basis, but "fall into two general categories":  "the health and well-being—both physical and economic—of [a State's] residents in general," and the State's "interest in not being discriminatorily denied its rightful status within the federal system."  Id. at 607.

Assuming, arguendo, that an Indian tribe may sue under § 1983 as parens patriae, see, e.g., Alaska v. Native Village of Curyung, 151 P.3d 388, 400 (Alaska 2006) (recognizing such a suit), all of Plaintiffs' § 1983 claims directed at the state court action seek to vindicate the Tribes' sovereign status.  The underlying interest at stake is the Tribes' sovereign immunity, not their members' economic interests in the funds deposited with First Bank, which are only ancillary to sovereign immunity.

- 10 -

See Inyo Cnty., 538 U.S. at 711 ("It is only by virtue of the Tribe's asserted 'sovereign' status that it claims immunity from the [state] processes."). Further, there is no allegation of discriminatory treatment. Therefore, Plaintiffs cannot avail themselves of the parens patriae doctrine in order to maintain any § 1983 claims against Judge Haught or First Bank that are directed at the state court action. Thus, we need not determine whether First Bank's use of the state judicial process rendered it a state actor for § 1983 purposes or whether the claims for injunctive and declaratory relief directed at the state court action are barred by either § 1983 or the AIA.

**B**

We next consider the district court's determination that the AIA bars Plaintiffs' claims for prospective injunctive and declaratory relief against Judge Haught.[6] The AIA provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Plaintiffs invoke the first two exceptions to the AIA. As to the first, they claim that, through 28 U.S.C. § 1362, Congress expressly

---

[6] The district court raised the AIA sua sponte, so we will consider all of Plaintiffs' arguments on this topic even though they were not presented to the district court.

- 11 -

authorized federal courts to enjoin state court proceedings.[7]  Their argument is neatly summarized in one of the cases they rely on, Cayuga Indian Nation of New York v. Fox:

> Plaintiffs contend that the [AIA] does not apply where, as here, the party seeking to enjoin state court proceedings is an Indian Tribe. They reason as follows: The Supreme Court has held that the [AIA] does not apply where the United States is the party seeking the injunction.  Leiter Minerals v. United States, 352 U.S. 220 (1957); the United States, as trustee for Indian Nations, may initiate lawsuits to protect their interests, Moe v. [Confederated] Salish & Kootenai Tribes, 425 U.S. 463 (1976); 28 U.S.C. § 1362 permits the Cayuga Indian Nation to seek the injunctive relief that the United States could have sought, and therefore the Act is equally inapplicable where, as here, the Nation litigates under [§] 1362 in its own right.  Moe, supra, 425 U.S. at [473-75] (Indian Tribe is no more bound by the strictures of 28 U.S.C. [§] 1341 [the Tax Anti-Injunction Act] than the United States).

544 F. Supp. 542, 551 n.5 (N.D.N.Y. 1982) (some citations omitted).

The difficulty with this argument is that Moe involved an action to enjoin state tax collection on an Indian tribe, and there was clear Supreme Court precedent for the proposition that the United States could have brought the federal action on the tribe's behalf.  See Moe, 425 U.S. at 473.  In contrast, Plaintiffs have made no showing that the United States could have brought a federal action against Judge Haught on behalf of the Plaintiffs to enjoin him from exercising jurisdiction over First Bank's declaratory judgment action.  We note that First Bank did not seek to alienate

_____

[7] 28 U.S.C. § 1362 provides:  "The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States."

- 12 -

Plaintiffs' funds in the state court action, but only to determine First Bank's obligations with regard to the account in light of the unsettled question of tribal governance. Accordingly, we conclude that, under the particular facts of this case, § 1362 does not constitute an express Congressional exception to the AIA.

As to the AIA's second exception, Plaintiffs rely heavily on White Mountain Apache Tribe v. Smith Plumbing Co., 856 F.2d 1301 (9th Cir. 1988). In that case, a tribe sought to enjoin state proceedings against it on the ground that the claims should be heard in tribal court. Id. at 1304. The Ninth Circuit, without analysis, stated that an injunction of state proceedings falls within the second exception because the federal courts have "jurisdiction to preserve the integrity of tribal claims." Id. However, the court ultimately concluded that an injunction of the state court proceedings was not appropriate. Id. at 1306. In Tohono O'odham Nation v. Schwartz, the District of Arizona relied on White Mountain Apache in holding that federal district courts have jurisdiction under § 1362 to enjoin state court proceedings where "necessary to preserve the integrity of Indian sovereignty." 837 F. Supp. 1024, 1027-28 (D. Ariz. 1993). It reasoned that an injunction was appropriate because "[s]trong federal policy encourages tribal self-government and tribal self-sufficiency." Id. at 1028.

We cannot square the approach used in White Mountain Apache or Tohono O'odham with the plain language of § 2283. The AIA's second exception permits "[a] court of the United States" to enjoin state court proceedings "where necessary in

- 13 -

aid of its jurisdiction." 28 U.S.C. § 2283 (emphasis added). The possessive pronoun

"its" plainly refers to a federal court, not a tribal court. But in both White Mountain

Apache and Tohono O'odham, the court employed the second exception to aid the

jurisdiction of a tribal court, not a federal court. Further, the Supreme Court has

expressly rejected the contention that federal policy concerns permit application of an

exception to the AIA: "[A] federal court does not have inherent power to ignore the

limitations of § 2283 and to enjoin state court proceedings merely because those

proceedings interfere with a protected federal right or invade an area pre-empted by

federal law, even when the interference is unmistakably clear." Chick Kam Choo v.

Exxon Corp., 486 U.S. 140, 149 (1988); see also Bess v. Spitzer, 459 F. Supp. 2d

191, 202-03 (E.D.N.Y. 2006) (declining to follow White Mountain Apache and

Tohono O'odham, partially on this basis). We are not persuaded by White Mountain

Apache and Tohono O'odham and conclude that the second AIA exception does not

apply in the case at bar.

Plaintiffs argue in the alternative that their claim for prospective declaratory

relief against Judge Haught is not barred by the AIA. They rely on Thiokol Chemical

Corp. v. Burlington Industries, Inc., 448 F.2d 1328 (3d Cir. 1971),[8] in which the

---

[8] Two of the three other cases Plaintiffs cite in support of this argument did not turn on the AIA. See Steffel v. Thompson, 415 U.S. 452, 454 (1974) (considering threatened criminal charges); Puerto Rico Int'l Airlines, Inc. v. Silva Recio, 520 F.2d 1342, 1344-46 (1975) (considering abstention under Younger v. Harris, 401 U.S. 37 (1971)). In the third case, Absentee Shawnee Tribe of Oklahoma v. Combs, a district court in this circuit refused to dismiss claims for declaratory relief under the AIA

(continued)

- 14 -

court noted that § 2283 "explicitly prohibits only injunctions," but "[i]ts analogical extension to prohibit declaratory judgments is justified in situations where the underlying policy against unseemly interference with proper state litigation applies to both." Id. at 1332. The court stated that a declaratory judgment may nevertheless be proper if "the state suit is likely to turn on a question of federal law" and "if the state court does not proceed in normal course to adjudicate the matter or otherwise manifests willingness to hold its hand pending federal decision on that question." Id. Because Judge Haught did not manifest a willingness to await a federal declaration regarding the state court's jurisdiction, this exception does not apply. Judge Haught also declined to resolve the gubernatorial dispute, recognizing that the question was for the tribal courts, an answer undoubtedly consonant with Plaintiffs' theory of their federal case.

## C

This leaves us with Plaintiffs' § 1983 claims relating to First Bank's administrative freeze. We agree with Plaintiffs that the interest they assert in those

---

based on its determination that there is no Tenth Circuit decision interpreting the AIA as applying to declaratory relief. No. Civ-09-0091-F, 2009 WL 1752412, at *7 (W.D. Okla. June 18, 2009) (unpublished). But Plaintiffs do not argue that the AIA is inapplicable to requests for declaratory relief; their argument is that the AIA does not bar declaratory relief that would have the same effect as an injunction when significant federal questions are present. In any event, this court has acknowledged that "where an injunction is improper under § 2283, declaratory relief should not be given." Chandler v. O'Bryan, 445 F.2d 1045, 1058 (10th Cir. 1971) (citing Samuels v. Mackell, 401 U.S. 66 (1971), which applied Younger abstention in the declaratory judgment context).

claims relating to the freeze is a proprietary one because it is based on Plaintiffs'

contractual relationship with First Bank as depositors. We will assume that, as

depositors, Plaintiffs qualify as persons entitled to sue under § 1983. See Keweenaw

Bay Indian Cmty. v Rising, 569 F.3d 589, 596 (6th Cir. 2009) (reasoning that an

Indian tribe is a person able to sue under § 1983 where its sovereign status is

incidental to the rights at issue).[9] But First Bank did not act under color of state law

when it imposed the freeze. For a private party to be a state actor, it must have

"acted together with or . . . obtained significant aid from state officials, or" its

"conduct [must] otherwise [be] chargeable to the State." Lugar v. Edmondson Oil

Co., 457 U.S. 922, 937 (1982). In instituting the freeze, First Bank acted in its

capacity as a private bank; it obtained no significant aid from Judge Haught, nor was

its conduct chargeable to the state. Judge Haught's assumption of supervision over

the accounts did not transform First Bank's freeze into state action. Thus, even if

Plaintiffs, in the capacity of depositors, were "persons" who could sue First Bank

under § 1983, they could not maintain a § 1983 claim regarding the freeze.

**D**

Plaintiffs also contend that the district court ignored claims they asserted

outside of § 1983. They state that those claims were based on federal common law,

the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and "other statutes," and that

---

[9] The parens patriae doctrine is inapplicable to the § 1983 claims regarding the freeze because proprietary interests are not quasi-sovereign interests. Snapp, 458 U.S. at 602.

they sought to vindicate common-law property and contract rights. However, the amended complaint does not adequately present any federal claims other than those based on § 1983 or Ex Parte Young.

Plaintiffs point to portions of their Amended Complaint that contain citations to Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754 (1998), Seminole Tribe of Florida v. Florida, 517 U.S. 44, 47 (1996), and Kiowa Indian Tribe of Oklahoma v. Hoover, 150 F.3d 1163, 1165 (10th Cir. 1998). But none of these cases establish any common-law cause of action in federal courts. Plaintiffs' reliance on the Declaratory Judgment Act is similarly misplaced. That act involves procedural remedies; it does not confer any "substantive rights" or create a cause of action. Farmers Alliance Mut. Ins. Co. v. Jones, 570 F.2d 1384, 1386 (10th Cir. 1978).

The only other relevant, federal statutes that we can locate in the amended complaint are jurisdictional: 28 U.S.C. §§ 1331 and 1362. But neither provides substantive rights or a cause of action for Plaintiffs' claims. See Hanson v. Wyatt, 552 F.3d 1148, 1157 (10th Cir. 2008) (§ 1331); W. Shoshone Bus. Council v. Babbitt, 1 F.3d 1052, 1058 (10th Cir. 1993) (§§ 1331 and 1362). Moreover, in their responses to the motions to dismiss, Plaintiffs provided no reason for the district court to think they had raised anything other than claims under § 1983 to avenge the alleged deprivation of their rights under federal law. To the contrary, they repeatedly

stated that they were bringing claims under § 1983 and listed the substantive federal

bases for those claims.

**E**

Plaintiffs also claim the district court erred in denying their post-judgment

motion, arguing that the court should have provided them leave to amend their

complaint rather than dismissing any claims with prejudice.  Our review is for abuse

of discretion.  See Butler v. Kempthorne, 532 F.3d 1108, 1110 (10th Cir. 2008).

We reject Plaintiffs' contention that the court should have permitted them to

amend their complaint to add an allegation that First Bank became a state actor when

Judge Haught denied First Bank's motion to close the accounts.  This allegation does

not alter the fact that Plaintiffs are not "persons" authorized to bring a § 1983 claim

with respect to the state court action.  Plaintiffs also assert that the district court erred

in denying their request to add Boswell as a party, which they contend would have

alleviated the lack of a "person" able to bring § 1983 claims.[10]  That request,

however, came only at a hearing on Plaintiffs' post-judgment motion, and the district

court stated that it would not consider the request because it had not been presented

in the post-judgment motion itself.  We see no abuse of discretion.  See Fed. Ins. Co.

v. Tri-State Ins. Co., 157 F.3d 800, 805 (10th Cir. 1998) ("Issues raised for the first

---

[10] Plaintiffs also sought to add a supporting allegation that in August and September 2012, the federal government had, on an interim basis, recognized Boswell as the person through whom it would maintain its relationship with the Tribes, as it had done on several previous occasions.

- 18 -

time at oral argument are considered waived."); Daigle v. Shell Oil Co., 972 F.2d 1527, 1539 (10th Cir. 1992) (explaining that courts have no duty to consider "untimely raised legal theories which may support . . . jurisdiction").

Finally, Plaintiffs contend that the district court erred in denying them leave to amend their complaint to identify alternative grounds for their claims. In their post-judgment motion, Plaintiffs stated only that Claims 2-4 and 6 "are not solely based on 42 U.S.C. § 1983." At a hearing on the post-judgment motion, counsel for the Executive Branch referenced "federal treaties" and argued that the court should permit amendment to "clarify[] the federal claims." In light of the vagueness of these requests, we cannot say the district court abused its discretion. See Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1130-31 (10th Cir. 1994) (requiring a party to demonstrate "particular grounds" for a requested amendment and stating that "district courts" are not required "to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists").[11]

_____

[11] Plaintiffs mention that the administrative freeze jeopardized their federal contracts, but that was the subject of Claim 7 for intentional interference with contract under state law, not federal law, and the district court declined to exercise supplemental jurisdiction over that claim.
    Plaintiffs do contend that the district court erred in dismissing their "pendent party" claims under 28 U.S.C. § 1367, arguing that those claims (apparently regarding First Bank's administrative freeze) arose from the same transaction or occurrence as their federal claims against Judge Haught. We construe this confusing argument as a challenge to the district court's refusal to exercise supplemental jurisdiction over Claim 7. Given that the district court properly dismissed all federal claims prior to any substantial pretrial proceedings, we see no abuse of discretion in declining to exercise supplemental jurisdiction over Claim 7. See United Mine

(continued)

**IV**

The judgment of the district court is **AFFIRMED**. Plaintiffs' motion for expedited review of this appeal is **DENIED** as moot.

Entered for the Court


Carlos F. Lucero
Circuit Judge

---

Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Tonkovich v. Kan. Bd. of Regents, 254 F.3d 941, 945-46 (10th Cir. 2001) (finding no abuse of discretion in dismissal of state law claims under similar circumstances).